MAYOR AND ALDERMEN OF THE CITY OF CHATTANOOGA *v.*
BELT RAILWAY COMPANY *et al.*

(*Knoxville.*   September Term, 1910.)

1. COURT OF CIVIL APPEALS.  Has appellate jurisdiction of a
   chancery suit to abate the occupation of a street as a nuisance.
   The court of civil appeals has appellate jurisdiction of a chancery
   suit to abate a railroad company's occupation of a street, upon
   the ground that such occupation is a nuisance, and the supreme
   court is without appellate jurisdiction to entertain a direct
   appeal in such case; for the statute (Acts 1907, ch. 82)
   creating the court of civil appeals, and (by its 7th section)
   defining its jurisdiction, and excluding therefrom, among
   others, ejectment suits in chancery cases involving more than
   one thousand dollars, does not deprive that court of its ap-
   pellate jurisdiction in such case.

Acts cited and construed:  Acts 1907, ch. 82, sec. 7.

2. SAME.  Same.  Exclusion of chancery cases involving more
   than one thousand dollars from its jurisdiction applies only to
   suits seeking money recoveries.
   The provision in the statute (Acts 1907, ch. 82, sec. 7), excluding
   from the jurisdiction of the court of civil appeals those chan-
   cery cases involving more than one thousand dollars, applies
   only where the action is brought to recover a money judgment
   or direct money decree as the end or purpose of the litigation,
   and does not affect the other cases, though property of more
   than one thousand dollars in value is involved.  (*Post, pp.* 499,
   500.)

Acts cited and construed:  Acts 1907, ch. 82, sec. 7.

Cases cited and approved:  Brown v. Crystal Ice Co., 121 Tenn.,
   64; Mattox v. Bristol, 121 Tenn., 170.

Vol. 123—32

Chattanooga v. Railroad.

3. **SAME.** *Supreme court will transfer to the court of civil appeals causes of which it has the appellate jurisdiction.*

The supreme court will, under the statute (Acts 1909, ch. 192) authorizing such practice, transfer a cause to the court of civil appeals, where the jurisdiction of the appeal lies in that court, and the appeal has improperly taken to the supreme court. (*Post, p. 500.*)

Acts cited and construed: Acts 1909, ch. 192.

4. **SAME.** *Its appellate jurisdiction does not prevent ultimate resort to the supreme court.*

The statute (Acts 1907, ch. 82, sec. 7) giving the court of civil appeals appellate jurisdiction of certain cases does not deprive any litigant of an ultimate resort to the supreme court. (*Post, p. 500.*)

Acts cited and construed: Acts 1907, ch. 82, sec. 7.

FROM HAMILTON.

Appeal from the Chancery Court of Hamilton County. T. M. McCONNELL, Chancellor.

G. W. CHAMLEE, N. L. BACHMAN, and THOMAS & THOMAS, for complainants.

LEWIS SHEPHERD, for defendants.

MR. CHIEF JUSTICE SHIELDS delivered the opinion of the Court.

The bill in this case was filed for the purpose of obtaining a decree adjudging that the Belt Railway Com-

Chattanooga v. Railroad.

pany and the Alabama Great Southern Railway Company, were unlawfully occupying Vine street in the city of Chattanooga, and that such occupation was a nuisance, and abating it as such. A decree was rendered by the chancellor granting this relief. Thereupon the defendant appealed to this court.

This court is without jurisdiction to entertain the appeal. The matter in controversy does not fall within either of the four classes of cases specially withheld by section 7, c. 82, Acts 1907, from the jurisdiction of the court of civil appeals, and reserved to the supreme court—cases involving the constitutionality of the statutes of Tennessee, contested elections for office, State revenue, and ejectment. Nor is it embraced in that provision of the act which excludes from the jurisdiction of the court of civil appeals those chancery cases "in which the amount involved, exclusive of costs, exceeds $1000." We have uniformly held, since the passage of the act referred to, that this provision applies only where the action is brought to recover a money judgment. We have accordingly held that the court of civil appeals has jurisdiction of appeals in cases of forcible entry and detainer, *habeas corpus,* and divorce, although in the latter there may result incidentally a money decree in disposing of the question of alimony. We also held at the last term at Jackson that the court of civil appeals had jurisdiction of an appeal in a case wherein an injunction was sought for the purpose of restraining interference with the operation of a large business, although it appeared that the value of the

property involved in the controversy amounted to many thousands of dollars. We have also held that that court has jurisdiction of cases arising under bills to quiet title, without regard to the value of the property involved. Other illustrations may be found in *Mattox* v. *City of Bristol,* 121 Tenn., 170, 113 S. W., 381, and *Brown* v. *Crystal Ice Co.,* 121 Tenn., 64, 113 S. W., 360. In short, the value of the property involved is immaterial for the purpose of determining jurisdiction, except in those cases wherein a direct money decree is sought as the end or purpose of the litigation. Therefore, although the property to be affected by the present litigation is of greater value than $1000, the jurisdiction of the appeal is in the court of civil appeals, and the cause must be transferred to that court. This practice is authorized by chapter 192 of the Acts of 1909.

We may add that the statute, under the construction which we have given it, does not deprive any litigant of an ultimate resort to the supreme court. It only means that, except in a few classes of cases specified, an appeal must be first taken to the court of civil appeals. If dissatisfied with the judgment or decree of that court, the litigant may then seek relief in the supreme court by filing therein a petition for the writ of *certiorari,* The purpose of the statute was to prevent a congestion of the supreme court docket, the same purpose which prompted the creation of the court of chancery appeals in the year 1895. That court met the demand for which it was created, but experience suggested that an improvement could be made by increasing the number of

Chattanooga v. Railroad.

judges from three to five, and enlarging the jurisdiction of the court. This was done by chapter 82, Acts 1907. The same act changed the name to the court of civil appeals. To carry out the purposes of the act, and to continue the favorable conditions now for many years enjoyed by the people of the State, under which their litigation, although constantly increasing in volume and importance, has been promptly disposed of each year, in the court of last resort, we have given a liberal construction of the act, treating it as a remedial statute. It was believed, when the act was passed, that the litigants would be satisfied, in a large percentage of the cases, with the judgment of that court, and would not present many applications for *certiorari* in the supreme court. That expectation has been, in considerable measure, justified. Many of the smaller cases stop in that court that formerly came to the supreme court. In time, when the bar become more accustomed to that court, and observe how few of its judgments are reversed, a still greater number of cases will remain undisturbed in that court, and the useful purpose had in view by the legislature will be fully realized. Even now, under the imperfect conditions produced by the custom of prosecuting litigation to the last court possible, much good is effected by the operation of the act, not only in respect of those cases which stop finally in the court of civil appeals, but even in those which are brought to the supreme court by the writ of *certiorari*. In these latter, the opinions and findings of law and fact by the judges of that court, sent up with the transcript, are of much assistance in the final disposition of the cause.